UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**WILLIAM WILSON,**

  *Plaintiff*,

**v.**                                               **Case No.  SA-20-CV-01470-JKP**

**MARSHALL SHREDDING LLC,**
**MEDSHARPS TREATMENT LLC,**

  *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Marshall Shredding and MedSharps Treatment's (Medsharps) joint Motion for Summary Judgment. *ECF Nos. 30,37*. Plaintiff William Wilson responded. *ECF No. 35*. Upon consideration, the Court concludes the Motion for Summary Judgment shall be **GRANTED**.

## FACTUAL BACKGROUND

Wilson began employment with Medsharps in 2017 as a warehouseman, the position he held at the time of his termination on August 26, 2020. MedSharps processes medical waste. Marshall Shredding, a paper shredding business, is MedSharps's sister company. Marshall Shredding and MedSharps share the same managerial and support employees and use portions of the same facility, but the two companies are distinct and perform different services, serve different clients, and have their own, separate operational employees. Wilson never performed any work for Marshall Shredding.

At the time relevant to this action, MedSharps had approximately 30 employees supporting its operations. In March 2020 at the onset of the COVID pandemic, MedSharps had contracts with hospitals to collect medical waste. For this reason, its employees did not work remotely. One of Medsharps's measures to reduce exposure to COVID was to require employees to sign in at the front desk upon arrival and take their temperature using a contactless forehead thermometer. The thermometer was kept at the front desk where employees signed in for work.

On Tuesday, April 14, 2020, Wilson texted his supervisor, Rick Huron, informing Huron he was "going to get COVID tested this week." *ECF No. 30, Exh. E, p. 74*. Huron responded, acknowledging Wilson should get tested and telling him to get a doctor's note. *Id.* at pp. 74-76. Huron also advised Wilson that, if he needed to take time off, Wilson should inform Huron so Huron could inform the two operations managers, Walter Holden or Jay Joseph. *Id.* at pp. 77-78. On April 19, 2020, via text, Wilson informed Huron that he was tested for COVID and would be quarantining pending the results. *Id*. Wilson returned to work some time thereafter.

On June 14, 2020, Wilson texted Huron stating he needed to take his child to a doctor's appointment the next day. *ECF No. 30, Exh. G, pp 82-84*. Huron responded that two other employees were out on vacation. Wilson responded, declining to reschedule the appointment. *Id.* Huron informed Wilson he would need to provide documentation of the appointment upon his return. *Id*. A few days later, on Thursday, June 25, 2020, Wilson arrived late without providing any prior notice. *Id.* at 86. On Friday, July 10, 2020, Wilson did not show up to work or call in. *Id.* at 87. Upon his return to work, Wilson was written up for lack of attendance and communication and counseled the "next time it could be up to suspension or termination." *ECF No. 30, Exh. B., p. 186:23-187:18; Exh. K, p. 52*.

The parties dispute how the facts relevant to this Motion transpired. The Court will construe the facts as portrayed by Wilson in his Declaration supporting his Response. *See ECF No. 35, Exh. 1*. Wilson declares that on July 28, 2020, he fell ill at work and asked Huron permission to leave to get COVID tested. *Id. at p. 2*. Huron denied his request to leave work and required he work the remainder of his shift. Wilson texted Huron later that evening to request the next day, July 29th, off so he could get COVID tested. Huron but instructed Wilson to contact David Moad, Chief Operating Officer, or Mary Jon Hayne, Chief Financial Officer. *Id*. Wilson called Moad and Hayne that evening after work on their office lines and left a message. The following morning, July 29, Wilson texted Huron for the cell numbers of Moad and Hayne. *Id.* Later that day, Wilson was tested for COVID, but was not able to get his children tested. He informed Huron through text that evening that he was not able to reach Moad and would need to get his children tested the following day at their pediatrician's office. By text message, Wilson also informed Moad of the same and requested time to quarantine. *Id*.

On Friday, July 30, 2020, Wilson obtained COVID tests for his children and spoke with Moad that evening. *Id*. Wilson stated he needed to take time off from work because he and his child had all of the COVID symptoms, and he was waiting for test results for himself and his children. Wilson declares he "told Mr. Moad that I had looked into it and the law required that I be allowed to quarantine regardless of whether I was ultimately positive or negative and that I was entitled to sick pay during quarantine. *Id*. Mr. Moad disagreed. He said I would not have to quarantine if I was negative, and that regardless, I was not entitled to any sick pay beyond what I had accrued. *Id*.

Later in the evening of July 30, Wilson received an email stating he was COVID positive and directing him to quarantine for at least three days after his symptoms resolved. *ECF No. 35,*

3

*Exh. 1. P. 3.* On Monday, August 3, 2020, Wilson also received positive test result for one of his sons. On the evening of August 3, Wilson texted Moad "asking for an update on his job status" and informing him of the positive test results. *Id*. Moad requested Wilson send him a copy of the test results. Wilson asked Moad for Valle's cell number so he could send the results to her as well. *Id*.

On the following evening, August 4, 2020, Wilson exchanged texts with Dee Valle, the Human Resources Manager, and she requested a copy of his test result, but did not request that of his son. *Id*. He texted a screenshot of the result to her and Moad. *Id*. Wilson declares that "based upon her response, I figured that I had provided everything they needed." *Id*. Valle requested more detailed documentation that included demonstration that the test result was his, the date of his test results, whether he or his children were still symptomatic, and whether he intended to seek treatment from a healthcare provider. *Id*.; *ECF No. 30, Exh. H at 128; Ex. B at 141:17-142:19, 206:18-207:1*; *Ex. I*. Valle informed Wilson she needed this information to determine his quarantine period. *Id.* Wilson provided this information to Valle a week later on Tuesday, August 11, 2020. *ECF No. 30, Exh. H at 127-28*.

Wilson returned to work on Thursday, August 13, 2020. *ECF No. 30, Exh. J, p. 107*. Upon his return, Wilson was counseled for not communicating with MedSharps as he had been instructed. *ECF No. 30, Exh. K, p. 53*. Wilson was notified that his "failure to follow any company procedure may result in Suspension and or Termination." *Id.* Wilson declares that upon his return to work, he was told he had been replaced and would have to work a later shift; however, he was allowed to maintain his previous shift when he explained his childcare obligations required that he maintain the same shift. *ECF No. 35, Exh. 1.*

On August 21, 2020, the thermometer at the front-desk employee check-in disappeared. MedSharps employees' review of the video security cameras revealed Wilson took the thermometer from the front desk, although the parties dispute whether removal was intentional. *ECF No. 30, Exh. p. 2; Ex. N; Ex. V. Decl. at 3; ECF No. 35, Exh. 1, p. 4.* David Moad, Mary Jon Hayne, and Rick Huron attest that after viewing the security video recordings, they decided to terminate Wilson because they regarded the removal of the thermometer as a misuse of company property that created a safety risk to other employees. *ECF No. 30, Exh. T at 24:17-25:13.* Wilson disputes that he took the thermometer and disputes whether his removal was intentional. Wilson contends the warehouse employees often used the thermometer in the breakroom. *ECF No. 35, Exh. 1, p. 4.*

On August 26, 2020, Moad, Hayne, Huron, and Valle met with Wilson to question him about the missing thermometer and inform him of his termination. During the meeting, Wilson texted and called his brother Robert, who also worked at MedSharps, and told him the thermometer was located in the breakroom behind a box of coffee sweeteners on a shelf next to the refrigerator. *ECF No. 30, Exh. S, Wilson Depo. at pp. 22-31, Ex. 1.* Upon Robert's return of the thermometer, Wilson's employment was terminated. *Id. at Exh. A at pp. 3-4.*

Wilson filed suit against Marshall Shredding and Medsharps on December 29, 2020, alleging he was discharged in retaliation for taking leave provided by the Emergency Paid Sick Leave Act (EPSLA), which is part of the Families First Coronavirus Response Act (FFCRA). *ECF No. 1.* In his Complaint, Wilson alleges Medsharps is an employer within the meaning of EPSLA and FFCRA, and he was a covered employee. *Id.* Wilson contends he took leave due to COVID infection, and therefore, was protected under these Acts; however, Medsharps terminat-

ed his employment in retaliation for him taking the protected leave. *Id.* Medsharps Marshall Shredding filed this joint Motion for Summary Judgment. *ECF No. 30.*

## LEGAL STANDARD

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[1] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the non-movant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014)(internal citation omitted).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)(citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, SA-16-CV-394, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence

7

and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)(citations omitted).

## DISCUSSION

In response to the rapid proliferation of COVID-19, on March 18, 2020, Congress enacted the Families First Coronavirus Response Act (FFCRA). Pub. L. No. 116-127, 134 Stat 178 (2020)*,* § 5101, et seq.*; ESI/Emp. Sols., L.P. v. City of Dallas*, 450 F. Supp. 3d 700, 739 n.19 (E.D. Tex. 2020). The Emergency Paid Sick Leave Act (EPSLA) is a component of the FFCRA. *Id. at Division E*. The EPSLA requires employers to provide up to 80 hours of paid sick leave for employees who are ill, quarantined, or seeking treatment as a result of COVID-19, or caring for those who are sick or quarantined as a result of COVID-19. 29 U.S.C. § 2620(a)(1)(B), FFCRA §§ 5102(a)–(b), 5108–09, 5110(2)(B); *Alvarado v. ValCap Group, LLC*, No. 3:21-CV-1830-D, 2022 WL 19686, at *3 (N.D. Tex. Jan. 3, 2022); *Bruce v. Olde England's Lion & Rose Rim, LLC*, No. SA-20-CV-00928, 2021 WL 4953910, at *4 (W.D. Tex. Oct. 25, 2021). FFCRA/EPSLA contains an anti-retaliation provision stating, "[i]t shall be unlawful for any employer to discharge, discipline, or in any other manner discriminate against an employee who – (1) takes leave in accordance with the Act; and (2) has filed any complaint or instituted or causes to be instituted any proceeding under or related to this Act…." 29 U.S.C. § 2620(a)(1)(B), FFCRA §§ 5104. § 5101, 134 Stat. at 196; *Bruce,* 2021 WL 4953910, at *4. The FFCRA, and with it, the EPSLA, were expressly set to expire on December 31, 2020. *Brown v. Reny Co.*, No. 4:21-CV-395, 2022 WL 992696, at *4 (E.D. Tex. Mar. 31, 2022). At issue in this case, by its own terms, EPSLA exempts from its protections those workers who are "health care providers." §§ 5102(a), 5110(4); 29 U.S.C. § 2611(6).

Although the EPSLA states it shall be enforced through the Fair Labor Standard Act's (FLSA) remedies, given its relative recency and short life, there is "scant caselaw interpreting . . . the [EPSLA] or the regulations." *Johnson v. Gerresheimer Glass Inc.*, No. 21-CV-4079, 2022 WL 117768, at *2 (N.D. Ill. Jan. 12, 2022) (quoting *Colombe v. SGN, Inc.*, No. 5:20-CV-374, 2021 WL 1198304, at *2 (E.D. Ky. Mar. 29, 2021)). Thus, courts rely on FLSA caselaw to interpret the EPSLA and analyze any alleged violations. *Stacey v. ValCap Grp. LLC*, No. 3:21-CV-01831, 2021 WL 6135486, at *2 (N.D. Tex. Dec. 27, 2021).

Medsharps contends it is entitled to summary judgment on Wilson's retaliation cause of action because he was a "health care provider" under the terms of EPSLA, and therefore, was expressly exempt from the EPSLA protections. For this reason, Wilson cannot assert a cause of action under the EPSLA as a matter of law. With regard to the substantive merits of the asserted cause of action, Medsharps contends Wilson cannot prove retaliation as a matter of law because he cannot show he engaged in an EPSLA-protected activity by taking leave or that MedSharps's reason for his termination was pretext. Alternatively, Medsharps concludes the Court should limit Wilson's damages claim to those incurred on or before December 31, 2020, the self-imposed termination of EPSLA.

**Argument One: Whether Wilson is a "Health Care Provider" Exempt from the EPSLA**

The parties engage in extensive argument on the issue whether the EPSLA applies to Wilson under these facts, particularly, whether Wilson is a "health care provider" exempt from the EPSLA protections. *See* Pub. L. No. 116-127, § 5102(a). While the EPSLA, itself, provides a definition of the term, determination whether Wilson was a "health care provider" exempt from the EPSLA is complicated by the timing of the Department of Labor's (DOL) expansion of this definition on April 1, 2020, prior to Wilson's termination, and the vacatur of the DOL definition

by the Southern District of New York on September 16, 2020, after Wilson's termination. *See* Fed. Reg. 19,351; *New York v. United States Dep't of Labor*, 477 F.Supp.3d 1 (S.D.N.Y. 2020). The parties dispute which definition applies to Wilson due to the vacatur of the DOL's definition and whether Medsharps is entitled to a good-faith reliance defense.

The Court need not determine which definition applies under these facts given the Court's subsequent findings and conclusions regarding Wilson's inability to satisfy his prima facie burden of proof as a matter of law even if he did fall within the EPSLA protections. Consequently, proceeding to the next argument, the Court presumes without deciding that Wilson was not a "health care provider," and therefore, worked within the EPSLA protection.

**Argument Two: Whether Wilson Can Satisfy His Prima Facie Burden of Proof on the EPSLA Retaliation Cause of Action**

Medsharps argues it is entitled to summary judgment because Wilson cannot satisfy his prima facie burden of proof as a matter of law pursuant to the terms of the EPSLA. Medsharps contends Wilson did not specify he intended to take paid sick leave under the EPSLA in July/August 2020 when he was absent to get tested and quarantine for COVID, demonstrating his leave was not an activity protected from retaliation under the EPSLA. Because Wilson did not take leave pursuant to the EPSLA, Medsharps contends he cannot establish a prima facie case of retaliation as a matter of law. For this reason, Medsharps seeks summary judgment.

Wilson contends the EPSLA does not require that he designate he intended to take leave under the EPSLA to be protected from retaliation. Instead, to prove retaliation, he need only show the leave he did take fell within the purview and protection of the EPSLA. Because it is undisputed he took leave to get tested and recover from COVID, Wilson contends his leave fell

within the purview of the EPSLA, and that is all that is required to satisfy his prima facie burden of proof for a retaliation claim under the EPSLA.

**Analysis**

Section 5104 of the FFCRA makes it unlawful for an employer "to discharge, discipline, or in any other manner discriminate against any employee who ... takes leave in accordance with this Act[.]" 134 Stat. at 196–97; 29 C.F.R. § 826.150(a); *Colombe*, 2021 WL 1198304, at *3. Willful violation of Section 5104 is equivalent to a violation of the FLSA. 134 Stat. at 196–97, §5105(b). Therefore, conceptually, FFCRA/EPSLA retaliation "may be brought under the FLSA." *Colombe*, 2021 WL 1198304, at *3 (citing *Kofler v. Sayde Steeves Cleaning Serv., Inc.*, No. 8:20-CV-1460-T-33, 2020 WL 5016902, at *2 (M.D. Fla. Aug. 25, 2020)).

Causes of action for retaliation under the EPSLA are analyzed under the *McDonnel-Douglas* burden shifting evidentiary framework typically utilized in the context of Title VII employment discrimination suits. *Atwood v. JCF Residences Mgmt. Co.*, Case No. 1:20-cv-00056, 2022 WL 185187, at *5, *8 (M.D. Tenn. Jan. 19, 2022); *Crider v. Lute Supply, Inc.*, No. CV 2:20-81 (WOB-EBA), 2022 WL 760874, at *6 (E.D. Ky. Mar. 11, 2022). Within the context of a Motion for Summary Judgment under the *McDonnell Douglas* framework, the burden of production falls first upon the plaintiff to present evidence sufficient to establish a fact or raise a presumption of the alleged retaliation. *Alvarado*, 492 F.3d at 611; *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). This burden is typically referred to as the presentation of prima facie evidence. *Alvarado*, 492 F.3d at 611. If the plaintiff presents this prima facie evidence, the plaintiff creates a presumption of retaliation. *Id.* The burden of production, then, shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Alvarado*, 492 F.3d at 611; *see also Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254–56 (1981). Because

only the burden of production shifts at this stage, the employer need only articulate a legitimate, nondiscriminatory reason, which may not be evaluated or analyzed for its credibility. *Reeves,* 530 U.S. at 142; *Alvarado*, 492 F.3d at 611.

If the employer sustains its burden of production, the presumption of retaliation dissipates. *Reeves,* 530 U.S. at 142; *Alvarado*, 492 F.3d at 611; *McCoy*, 492 F.3d at 556. At this final stage, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [retaliated] against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S., at 253. Within the context of a Motion for Summary Judgment, to satisfy this burden of persuasion, the plaintiff must present evidence which raises a genuine dispute whether: (1) the employer's proffered reason is not true but is instead a pretext for retaliation; or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.,* 482 F.3d 408, 411-12 (5th Cir. 2007); *Williams v. Time Warner*, 98 F.3d 179, 181 (5th Cir. 1996). Although the prima facie case and the inferences drawn therefrom may still be considered at the pretext stage, this evidence must be combined with sufficient evidence to permit the trier of fact to conclude the employer unlawfully retaliated against the plaintiff. *Reeves,* 530 U.S. at 142. To this effect, even if the ultimate factfinder could find the employer's reason unpersuasive or contrived, there must still be sufficient evidence for the factfinder to believe the employee's explanation for the adverse action, that is, the employer unlawfully retaliated. *Id.* at 146-148. Unsubstantiated assertions and conclusory allegations of discrimination are not competent summary judgment evidence, and therefore, are insufficient to support a party's burden at any stage. Fed. R. Civ. P. 56(c),(e); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002); *Ragas*, 136 F.3d at 458.

### 1. Wilson's demonstration of a prima facie case

At the first prong, the demonstration of a prima facie case, the elements of a retaliation claim are identical to those for retaliation under the FLSA. *Jackson v. Midnight Express Power Boats, Inc.*, No. 20-22160-CIV, 2022 WL 993684, at *2 (S.D. Fla. Mar. 24, 2022). Following this standard, a prima facie case of retaliation under the FLSA, as extended to the EPSLA, requires the employee show (1) he engaged in protected activity under the EPSLA; (2) his exercise of this right was known by the employer; (3) the employer took an employment action adverse to him; and (4) there was a causal connection between the protected activity and the adverse employment action." *Colombe*, 2021 WL 1198304, at *3; *Pettit v. Steppingstone, Center for the Potentially Gifted*, 429 F. App'x 524, 530 (6th Cir. 2011) (citing *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006)). For the first prong, taking paid sick leave under the EPSLA is the protected activity. *Colombe*, 2021 WL 1198304, at *3; *see* 29 C.F.R. § 826.150(a), FFCRA, § 5104(1). Therefore, "taking valid leave pursuant to the provisions of EPSLA is a necessary condition for success" on an EPSLA retaliation claim. *Colombe*, 2021 WL 1198304, at *3.

To trigger paid sick leave under the EPSLA, the employee must provide, prior to taking leave, documentation containing "(1) Employee's name; (2) Date(s) for which leave is requested; (3) qualifying reason for the leave; [ ] (4) Oral or written statement that the Employee is unable to work because of the qualified reason for leave[; and (5)] ... the name of the health care provider who advised the Employee to self-quarantine due to concerns related to COVID-19." 29 C.F.R. § 826.100 (a), (c); 85 FED. REG. at 19,339; *Colombe*, 2021 WL 1198304, at *4. This provision must also be read in conjunction with the provision allowing that "[a]n Employer may require an Employee to follow reasonable notice procedures after the first workday (or portion

thereof) for which an Employee takes Paid Sick Leave. . . . *Compare* 29 C.F.R. §§ 826.100,826.150 *with* Section 826.90. In addition, if "an Employee fails to give proper notice, the Employer should give him or her notice of the failure and an opportunity to provide the required documentation prior to denying the request for leave." 29 C.F.R. § 826.90(a)(l). Importantly, "[a]n Employer may not require the notice to include documentation beyond what is allowed by § 826.100." 29 C.F.R. § 826.90(c).

A failure to satisfy any of these notice requirements precludes EPSLA protection. *Colombe*, 2021 WL 1198304, at *3-4; *Jackson*, 2022 WL 993684, at *3 (both within context of a Federal Rule 12(b)(6) Motion to Dismiss). The FFCRA/EPSLA "does not extend to requests for or attempts at leave. . . The FFCRA protects only an employee 'who-takes leave in accordance with this Act.'" *Colombe,* 2021 WL 1198304, at *5 (quoting 29 USC § 2615(a)(1), §5104, 134 Stat. at 197).

While these notice provisions seem applicable to causes of action in which an employee sues for paid sick leave owed under the EPSLA, which Wilson does not assert, Courts also extend these notice requirements to a retaliation cause of action. *See Colombe*, 2021 WL 1198304, at *3-5; *Jackson*, 2022 WL 993684, at *3. Applied under these facts, because taking valid leave pursuant to the provisions of the EPSLA is "a necessary condition" to establish a prima facie case of retaliation, Wilson must show he "took leave under the EPSLA to establish the 'protected activity' prong of [his] retaliation claim." *See Colombe*, 2021 WL 1198304, at *3; 29 C.F.R. § 826.150(a).

The parties do not dispute the fact that Wilson did not specifically request or take leave "in accordance with the Act." If disputed, Wilson provides no evidence on this point. Wilson provides no evidence he ever exercised his rights under the EPSLA. Wilson does not provide ev-

14

idence suggesting that, before or after he took leave to quarantine and care for his child, he followed the necessary steps to take EPSLA leave or provided all the required information. The summary judgment evidence demonstrates he did provide some of the information when requested, but not all, and he never indicated his intent to take paid sick leave as provided under the EPSLA.

To the contrary, Medsharps provides evidence Wilson took COVID-related leave July/August 2020 when he contracted COVID; however, he failed to provide the required documentation to take leave "in accordance with" the EPSLA. In particular, Medsharps provides summary judgment evidence that Wilson never: (1) notified MedSharps of the specific dates for which he was requesting leave; (2) provided the name of the health care provider who advised him to self-quarantine for COVID-19 related reasons; (3) stated he was unable to work or telework; or (4) provided the name of the health care provider who advised him to self-quarantine for COVID-19 related reasons. MedSharps also specifically asked Wilson whether he was seeking the care of a healthcare provider, and he never responded. *ECF No. 30, Exh. A at 3-4; Exh. H at 126; Exh. V, Valle Decl., at 1-3*. Thus, because Wilson never provided the required notice and documentation for taking leave "in accordance with" the EPSLA, Wilson did not engage in protected activity, which is a "necessary condition of success" on this retaliation cause of action. *See Colombe*, 2021 WL 1198304, at *4; *Jackson*, 2022 WL 993684, at *3; *accord Figueroa Collazo v. Ferrovial Construccion PR*, No. CV 20-161, 2021 WL 4482268, at *8 (D.P.R. Sept. 30, 2021); *Toro v. Acme Barricades*, No. 6:20-CV-1867, 2021 WL 3207632, at *5 (M.D. Fla. Apr. 9, 2021).

Wilson's contention that he does not need to allege or provide proof that he sought to take leave under the EPSLA contradicts the plain language of the EPSLA and interpreting regu-

lations which require he provide Medsharps documentation containing the enumerated information *prior to taking* paid sick leave under the EPSLA, or within "a reasonable time." *See* 29 C.F.R. § 826.100(a).

### 2. Medsharps's failure to inform of deficiencies or post notice of the EPSLA protections

Wilson contends his failure to provide the required notice of EPSLA leave was excused by Medsharps' failure to inform him of any deficiencies when supervisors knew he took leave for COVID-related reasons and by Medsharps's failure to post notice of the employees' entitlement to paid leave under the EPSLA. Wilson contends he did not know he was entitled to paid sick leave under the EPSLA because Medsharps did not post this notice, and had Medsharps requested the required information, or if Medsharps had posted the information regarding the required information and procedure, he would have complied. Because Medsharps also failed to comply with the notice provisions of the EPSLA, Wilson contends Medsharps cannot now assert he does not qualify for EPSLA protection.

The EPSLA requires employers to give notice of the requirements of the Act to their employees. Specifically, the Act requires the employer "shall post and keep posted, in conspicuous places on the premises of the employer where notices to employees are customarily posted, a notice, to be prepared or approved by the Secretary of Labor, of the requirements described in this Act." § 5103(a), 134 Stat. at 196. Similarly, the pertinent regulation provides this posted notice must explain "the FFCRA's paid leave provisions and provid[e] information concerning the procedures for filing complaints of violations of the FFCRA..." 29 C.F.R. § 826.80(a). "An Employer may satisfy this requirement by emailing or direct mailing this notice to Employees[.]" 29 C.F.R. § 826.80(b); *Colombe*, 2021 WL 1198304, at *5.

Wilson declares he provided all the information requested of him, and Medsharps never informed him of any deficiencies even though his supervisors knew he took leave for COVID-related reasons. *ECF No. 35, Exh. 1, pp. 3-4.* Wilson declares no one ever asked him for the dates he was seeking leave, the name of any healthcare provider, or the name of his son and son's pediatrician. Wilson declares that "[h]ad the information been requested of him, [he] would have gladly provided it." *Id.*

Again, the Court finds the *Colombe* court's finding on Wilson's same argument instructive. *See Colombe*, 2021 WL 1198304, at *5. Even in light of Wilson's declaration and construing the facts in his favor, as in *Colombe*, Wilson's argument fails because the EPSLA does not expressly provide that an employee's failure provide notice of intent to take EPSLA leave and to provide the enumerated information is excused by the employer's default in posting notice of entitlement to the EPSLA protections. *See id.* Decisively, the EPSLA does not condition an employee's obligation to provide notice pursuant to § 5104 upon the employer's satisfaction of its notice obligations. Therefore, an employee's failure to provide notice is not excused by an employer's concurrent notice default. *Colombe*, 2021 WL 1198304, at *5-6. The EPSLA does "not provide a tool, and certainly no private action, with respect to [an employer's] failure to comply with § 5103, the notice section." *See* § 5105, 134 Stat. at 197; *Colombe*, 2021 WL 1198304, at *6.

Wilson provides no statutory or caselaw support for this argument. Further, the evidence shows Medsharps requested the information required under the EPSLA prior to Wilson taking leave to quarantine due to COVID; however, he did not provide it until a week after his quarantine began. As in *Colombe*, the Court finds the undisputed facts and summary judgment evidence demonstrate Wilson failed to provide the information required under the EPSLA to obtain its

17

protections, and therefore, he cannot establish his prima facie burden of proof as a matter of law for retaliation for taking leave pursuant to the EPSLA.

For these reasons, Marshall Shredding and Medsharps are entitled to summary judgment as a matter of law.

## CONCLUSION

Defendants Marshall Shredding and MedSharps Treatment's joint Motion for Summary Judgment is **GRANTED**.

It is so ORDERED.
SIGNED this 21st day of July, 2022.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE